UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VUONG NGUYEN, | No.  1:26-cv-00015 DAD SCR |
| Petitioner, | |
| v. | ORDER AND |
| TONYA ANDREWS, | FINDINGS & RECOMMENDATIONS |
| Respondent. | |

Petitioner is a federal immigration detainee representing himself in this habeas corpus action filed pursuant to 28 U.S.C. § 2241.  He has paid the required filing fee.  This action was referred to the undersigned by operation of Local Rule 302(c)(17) and 28 U.S.C. § 636(b)(1).

**I.      Factual and Procedural History**

**A.  Petitioner's § 2241 Petition**

The following facts are taken from Petitioner's verified § 2241 petition filed on January 5, 2026.  ECF No. 1.  Petitioner was born in Vietnam in 1982 and came to the United States with his family in 1996 under refugee status.  Id. at 6.  In 2003, petitioner was convicted of a felony.  On May 8, 2003, an Immigration Judge ("IJ") ordered him removed from the United States and deported to Vietnam.  When Vietnam declined to accept petitioner, Immigration and Customs Enforcement ("ICE") released him under an order of supervision.  At point, he had spent three months in immigration detention in San Diego, California.  Id.  ICE detained petitioner

1

again in 2011 for five months in Florence, Arizona.  ICE released petitioner under an order of supervision after Vietnam did not issue a travel document for deportation.  Id.; see also id. at 11 (letter from the Embassy of Vietnam dated July 31, 2011, declining to issue petitioner a travel document).

When petitioner reported to the ICE field office in Houston, Texas, on October 1, 2025, an ICE agent arrested him and revoked his order of supervision.  ECF No. 1 at 6.  Petitioner received neither an opportunity to be heard nor an informal interview by an ICE agent to notify him that his order of supervision was being revoked.  Id.  Petitioner states that he has not violated any conditions of supervision and is entitled to due process.  After his arrest, ICE detained petitioner for about 25 days in the Montgomery Conroe Facility.  He was then transferred by plane to the Golden State Annex in McFarland, California, within this judicial district, where he has been detained for about two months.  Id.

Petitioner explains that he is not challenging ICE's right to execute his final order of removal.  Rather, he is challenging the legality of his current detention under the Due Process Clause of the Fifth Amendment, the Supreme Court's decision in Zadydas v. Davis, 533 U.S. 678 (2001), and DHS regulations at 8 C.F.R. §§ 241.4 and 241.13.  ECF No. 1 at 6.  He argues that he has been detained cumulatively for more than ten months since his order of removal in 2003, which is "over the reasonable legal time allowed for ICE to detain me" considering deportation to Vietnam is not reasonably foreseeable.  Id.  Petitioner adds that while on supervision, he has worked in construction and as a nail technician, paid taxes, and tried to be a productive member of the community.  Id. at 6.  By way of relief, he requests his immediate release and reinstatement of the previous order of supervision.  Id. at 6.

### B. Respondent's Response

On January 8, 2026, the undersigned directed respondent to file a return to the § 2241 petition.  ECF No. 3.  Respondent filed a timely response[1] together with the sworn declaration of Deportation Officer S. Olson ("Olson Decl.").  ECF Nos. 8, 8-1.  Respondent confirms petitioner

---

[1] Respondent requested an extension of time to file a response due to an e-mail system outage. ECF No. 7.  Respondent's request is granted, and her response is treated as timely.

2

was ordered removed from the United States in 2003 by an IJ because of a felony conviction and did not appeal.  ECF No. 8 at 1; ECF No. 8-1 at 2, Olson Decl., ¶ 6.  Respondent asserts that petitioner's detention is governed by 8 U.S.C. § 1231(a) and cites both § 1231(a)(1)-(2) and (a)(6) as specific statutory bases.  ECF No. 8 at 2.  Regarding detention under § 1231(a)(6), respondent maintains that there is not "any dispute that individuals like Petitioner, who is an admitted convicted alien smuggler, and who is otherwise 'determined by the Attorney General to be a risk to the community or unlikely to comply with the order or removal … may be detained beyond the removal period.'"  Id. (citing 8 U.S.C. § 1231(a)(6) and 8 C.F.R. § 241.4(a)).

Regarding petitioner's Zadvydas arguments, respondent counters that petitioner has only been detained for three months and thus is within the "six-month period where detention is presumptively reasonable[.]"  ECF No. 8 at 2.  Respondent says that the process to obtain petitioner's travel documents began the day after his arrest and that the government has reason to believe Vietnam will issue his travel documents in the next three months.  Id. at 3; Olson Decl. ¶¶ 9-10.  Respondent adds that in the past six months Vietnam has issued travel documents to similarly situated detained individuals in the Fresno sub office area of responsibility alone, and ICE has scheduled monthly flights to Vietnam.  Olson Decl. ¶¶ 10-11.

## II.    Legal Standards

The statutory and regulatory framework governing petitioner's original order of removal, his release on immigration supervision, and the subsequent revocation of his supervision is complex.  "Where a [noncitizen] falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention."  Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).

The detention of noncitizens who have been ordered removed from the United States is governed by 8 U.S.C. § 1231(a).  "In particular, § 1231(a)(6) provides that after a 90-day 'removal period,' a noncitizen 'may be detained' or may be released under terms of supervision."  Johnson v. Arteaga-Martinez, 596 U.S. 573, 575 (2022).  After the 90-day removal period has elapsed, ongoing detention is only authorized for "four categories of people: (1) those who are

'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those [DHS] determines 'to be a risk to the community'; and (4) those [DHS] determines to be 'unlikely to comply with the order of removal.'" Arteaga-Martinez, 596 U.S. at 578-79 (quoting 8 U.SC. § 1231(a)(6)).

Here, an IJ ordered petitioner removed to Vietnam on May 8, 2003, due to his felony conviction. ECF No. 1 at 6; Olson Decl. ¶ 7.[2] He was then detained for three months, until Vietnam formally declined to accept him. ECF No. 1 at 6. Given that the 90-day removal period ended in 2003, Petitioner's current detention is governed by § 1231(a)(6).

The Supreme Court examined the constitutional limits of discretionary detention under § 1231(a)(6) in Zadvydas, describing as "obvious" the "serious constitutional problem arising out of a statute that, in these circumstances, permits an indefinite, perhaps permanent, deprivation of human liberty without any" procedural "protection[s.]" 533 U.S. at 692 (2001). Zadvydas read an implicit due process limitation into § 1231(a)(6) in order to avoid serious constitutional problems. The Supreme Court reasoned that "the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693. As a result, "once [a noncitizen's] removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." Zadvydas, 533 U.S. at 699. In order to establish a uniform standard for determining when ongoing detention crosses constitutionally acceptable limits, the Supreme Court recognized a presumptively reasonable six-month period of detention. Id. at 701. If a noncitizen "provides a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Id.

Regulations issued by the Department of Homeland Security ("DHS") in the wake of Zadvydas also require administrative review of the ongoing detention of a noncitizen who has a final removal order. See Continued Detention of Aliens Subject to Final Orders of Removal, 66

---

[2] While neither party identifies the statutory basis for the IJ's removal order, it was likely 8 U.S.C. § 1227(a)(2)(A)(iii) (listing an aggravated felony conviction as a basis of removal).

Fed. Reg. 56967-01, 2001 WL 1408247 (Nov. 14. 2001).  After the 90-day removal period has expired, a noncitizen may request a review of whether there is a "significant likelihood of removal to the country to which he or she was ordered removed, or to a third country, in the reasonably foreseeable future."  8 C.F.R. § 241.13(a).  If it is determined that there is no significant likelihood of removal in the reasonably foreseeable future, the government "shall promptly make arrangements for the release of the [noncitizen] subject to appropriate conditions." 8 C.F.R. § 241.13(g)(1).  Certain specific conditions of supervision are described in 8 U.S.C. § 1231(a)(3) and 8 C.F.R. § 241.5.  See 8 C.F.R. § 241.13(h)(1).

As discussed in more detail below, under these regulations, DHS can revoke an order of supervision only when the noncitizen violates a condition of release or when "on account of changed circumstances" DHS "determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future."  8 C.F.R. § 241.13(i). Beyond directly enforcing constitutional and statutory rights under Zadvydas, habeas courts also enforce the procedures created by these regulations.  See Nguyen v. Hyde, 788 F. Supp. 3d 144, 152 (D. Mass. 2025) ("As here, where an immigration regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute ... and [ICE] fails to adhere to it, the challenged [action] is invalid.") (quotations and citation omitted).

### III.    Analysis

#### A.  Revocation of Supervised Release

While Respondent's response advances arguments why petitioner should not be released from detention on account of his reasonably foreseeable deportation, it fails to address petitioner's core argument that the revocation of his supervised release violated the Due Process Clause of the Fifth Amendment and DHS regulations.

When a noncitizen has been released from immigration detention, two DHS regulations, 8 C.F.R §§ 241.4(l) and 241.13(i), govern how and when the agency may revoke that release and re-detain the noncitizen.  These protections were "promulgated to protect a fundamental right derived from the Constitution."[3] Nguyen, 788 F. Supp. 3d at 152; see also Nguyen v. Charles, No.

---

[3]  As judges in related contexts have noted, though "ICE has the initial discretion to detain or

1:25-cv-1592 TLN CSK, 2025 WL 3492117, at *2 (E.D. Cal. Dec. 4, 2025) (noting 8 C.F.R. §§ 241.13(i) and 241.4(*l*) "protect important due process rights owed to non-citizens").

District Judge Drozd recently summarized the relevant DHS regulatory safeguards that petitioner invokes here:

> "Supervised release and any revocation of such release thereafter is governed by either 8 C.F.R. § 241.4 or 8 C.F.R. § 241.13." Bui v. Warden of the Otay Mesa Det. Facility, No. 25-cv-2111-JES-DEB, 2025 WL 2988356, at * 2 (S.D. Cal. Oct. 23, 2025). Section 241.4(*l*) states that release may be revoked when a noncitizen violates the conditions of release, the purposes of release have been served, it is appropriate to enforce a removal order, or it is indicated that release is no longer appropriate. Section 241.13(i) states that release may be revoked when the noncitizen has violated the conditions of release or there is a significant likelihood that the noncitizen may be removed in the reasonably foreseeable future. Both regulations require that the noncitizen be notified of the reasons for the revocation of his or her release and promptly afforded an informal interview to give him or her an opportunity to respond to the reasons for revocation. 8 C.F.R. §§ 241.4(*l*)(1), 241.13(i)(3). If a noncitizen remains detained, the regulations state that a second hearing is to be provided by the agency. 8 C.F.R. §§ 241.4(*l*)(3), 241.13(j) (within approximately three months or 6 months respectively). This framework provides "no opportunity to have a neutral party evaluate ICE's unilateral determination of the contested facts." Guillermo M.R. v. Kaiser, 791 F. Supp. 3d 1021, 1034 (N.D. Cal. July 17, 2025).
>
> ICE has a duty to follow its own regulations and, if it fails to do so, the detention is likely a violation of due process. See Diaz v. Wofford, No. 1:25-cv-01079-JLT-EPG, 2025 WL 2581575, at *7–8 (E.D. Cal. Sept. 5, 2025) ("DHS's failure to follow its own procedural regulations may constitute a due process violation."); Constantinovici v. Bondi, No. 3:25-cv-02405-RBM-AHG, 2025 WL 2898985, at *5 (S.D. Cal. Oct. 10, 2025) ("Both 8 C.F.R. § 241.4 and 8 C.F.R. § 241.13 were intended to 'provide due process protections to [noncitizens] following the removal period as they are considered for ... possible revocation of release ...' ") (quoting Santamaria Orellana v. Baker, No. 25-cv-1788-TDC, 2025 WL 2444087, at *6 (D. Md. Aug. 25, 2025); Bui, 2025 WL 2988356, at *3 (recognizing that respondent's failure to follow their own regulations may be a due process violation).
>
> Sections 241.4(*l*) and 241.13(i) "indicate that, when ICE revokes release to effectuate removal, 'it is [ICE's] burden to show a significant likelihood that the alien may be removed.'" Yan-Ling X. v. Lyons, No. 1:25-cv-01412-KES-CDB (HC), 2025 WL 3123793, at *4 (E.D. Cal. Nov. 7, 2025) (quoting Escalante v. Noem, No. 9:25-cv-00182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025)). When ICE claims it has determined changed circumstances, the court should review that claim in light of the factors set out in the regulations. See Hoac v. Becerra, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *3 (E.D. Cal. July 16, 2025) (reviewing ICE's changed circumstances determination regarding the foreseeability of removal in light of the factors in § 241.13(f)).

release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody." Pinchi v. Noem, et al., Case No. 5:25-cv-05632-PCP, 2025 WL 2084921, at *3 (N.D. Cal. July 24, 2025); see also Doe v. Becerra, et al., 787 F. Supp.3d 1083, 1093 (E.D. Cal. Mar. 3, 2025).

Uzzhina v. Chestnut, No. 1:25-cv-1594 DAD SCR, 2025 WL 3458787, at *3–4 (E.D. Cal. Dec. 2, 2025).

Based on the submitted record, the undersigned concludes that the government did not follow its own procedures when it revoked petitioner's supervised release. For one, respondent does not refute petitioner's claim that he did not receive an informal interview before he was re-detained as required by 8 C.F.R. §§ 241.4(*l*)(1) and 241.13(i)(3). Courts have found this violation alone to be sufficient grounds for habeas relief. See, e.g., Phan v. Beccerra, No. 2:25-cv-1757 DC JDP, 2025 WL 1993735, at *4 (E.D. Cal. July 16, 2025) (finding petitioner was likely to succeed on due process claim where respondents failed to provide an informal interview upon revocation of supervised release and collecting cases).

Moreover, the government was required to make a sufficient showing that petitioner's removal is significantly likely in the foreseeable future based on changed circumstances *before* it revoked his release. 8 C.F.R. § 241.13(i)(2); see Tran v. Noem, No. 25-cv-2391, 2025 WL 3005347, at *2 (S.D. Cal. Oct. 27, 2025) (stating that "§ 241.13(i)(2) requires that this determination is made before the removable [noncitizen] has had his release revoked"); Nguyen, 2025 WL 3492117, at *3 ("The 'on account of' language means that the 'changed circumstances' are a prerequisite to revocation.") (citing 8 C.F.R. § 241.13(i)(2)). Here, the government did not request travel documents for petitioner until the day *after* he was re-detained and processed for removal to Vietnam. Olson Decl. ¶ 9. "While submission of the travel packet may nominally increase the likelihood of Petitioner's removal now . . . it could not have possibly supported an agency determination at the time Petitioner's release was revoked." Nguyen, 2025 WL 3492117, at *3 (finding ICE improperly revoked the petitioner's release in violation of its own regulations and due process where the agency submitted the travel packet after the revocation).

In sum, there is no indication of a change in circumstances justifying petitioner's re-detention at the time of his revocation of release. Accordingly, because ICE did not follow its own regulations when making the determination to revoke petitioner's supervised release, the undersigned finds that petitioner's re-detention violated due process and recommends that his § 2241 petition be granted on this basis alone.

7

**B. Under <u>Zadvydas</u>, Petitioner's Continued Detention Violates Due Process**

Respondent's justifications for petitioner's continued detention are also unavailing. First, respondent submitted no evidence to support her assertion that petitioner may be detained now under 8 U.S.C. § 1231(a)(6) because he has been "determined by the Attorney General to be a risk to the community or unlikely to comply with the order or removal."[4] ECF No. 8 at 2 (citing § 1231(a)(6) and 8 C.F.R. § 241.4(a)). In fact, when ICE released petitioner subject to terms of supervision, it impliedly determined that he posed neither a flight risk nor a danger to the community. See <u>Uzzhina</u>, 2025 WL 3458787, at *4. There is nothing in the record to suggest that when ICE re-detained petitioner, there was an individualized determination that his criminal convictions constituted a change in circumstances such that petitioner could properly be found to pose a danger to the community. Moreover, the record indicates that petitioner's most recent alleged conviction occurred in 2013. Olson Decl. ¶ 6. The proposition that an individual living without apparent incident for twelve years is now dangerous would be dubious, to say the least.

Next, respondent contends petitioner's current period of detention has lasted only three months and, as such, remains presumptively reasonable under <u>Zadvydas</u>.[5] ECF No. 8 at 1-2. However, respondent does not dispute petitioner's sworn assertion that he has cumulatively spent ten months in immigration detention since his final order of removal. See ECF No. 1 at 6. The undersigned joins other courts in finding that this earlier period of detention should be aggregated with the current period of detention in determining whether petitioner remains within the

---

[4] Respondent appears to rely on 8 U.S.C. § 1231(a)(1) and (2) as purported additional detention authority. See ECF No. 8 at 2. Petitioner could not possibly be subject to 8 U.S.C. § 1231(a)(2)'s mandatory, 90-day "removal period" given he received a final order of removal nearly twenty-three years ago. See 8 U.S.C. § 1231(a)(1) ("The [90-day] removal period begins on . . . [t]he date the order of removal becomes administratively final.").

[5] The fact that a noncitizen has been held in-custody less than six months does not foreclose a claim that his or her detention is unlawful under <u>Zadvydas</u>. See <u>Clark v. Martinez</u>, 543 U.S. 371, 384 (2005) ("<u>Zadvydas</u> did not hold that the statute authorizes detention until it approaches constitutional limits; it held that, since interpreting the statute to authorize indefinite detention (one plausible reading) would approach constitutional limits, the statute should be read (in line with the other plausible reading) to authorize detention only for a period consistent with the purpose of effectuating removal."). Thus, even if petitioner's cumulative period of detention did not add up to more than six months, he may still be entitled to relief if respondents did not provide him adequate process prior to re-detention. See <u>Uzzhina</u>, 2025 WL 3458787, at *3 n.3.

presumptively reasonable six-month period.  See Nguyen v. Scott, 796 F.Supp.3d 703, 721-22 (W.D. Wash. 2025) (adding prior periods of detention to current period of detention in order to determine whether the petitioner's detention remained presumptively reasonable); Chen v. Holder, No. 6:14-cv-2530, 2015 WL 13236635, at *2 (W.D. La. Nov. 20, 2015) (finding that "[s]urely, under the reasoning of Zadvydas, a series of releases and re-detentions by the government ... while technically not in violation of the presumptively reasonable jurisprudential six month removal period, in essence results in an indefinite period of detention, albeit executed in successive six month intervals"); Siguenza v. Moniz, 2025 WL 2734704, at *3 (D. Mass. Sept. 25, 2025) ("Most courts to consider the issue have concluded that the Zadvydas period is cumulative, motivated, in part, by a concern that the federal government could otherwise detain noncitizens indefinitely by continuously releasing and re-detaining them.").  Accordingly, petitioner's aggregate post-final order detention of approximately ten months is not presumptively reasonable.  Zadvydas, 533 U.S. at 701.

Once the six-month period of "presumptively reasonable" detention has expired, a petitioner seeking release from pre-removal detention must show there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future."  Zadvydas, 533 U.S. 678 at 701.  Here, petitioner has submitted a letter from the Embassy of Vietnam dated July 31, 2011, declining to issue him a travel document.  ECF No. 1 at 11.  This letter, coupled with the fact the government has not been able to effect petitioner's deportation for more than 22 years, is sufficient to meet petitioner's burden.

The burden then shifts to respondent to "respond with evidence sufficient to rebut that showing."  Zadvydas, 533 U.S. at 701.  Respondent offers the declaration of Deportation Officer Olson for this purpose.  See Olson Decl. ¶¶ 9-11.  Olson does not state who informed her that Vietnam may issue petitioner's travel documents within the next three months or provide any particular factual support for this belief.  Further, courts have held that the deportation of similarly situated individuals to Vietnam alone does not establish a significant likelihood that the

9

petitioner's removal is reasonably foreseeable.[6]  "[W]hile this evidence supports Respondents' argument that the Government of Vietnam is accepting repatriation of more citizens generally, it does little to establish the likelihood of Petitioner's removal in the absence of evidence about what steps Respondents have taken to deport him specifically."  Nguyen v. Scott, No. 2:25-cv-1398, 2025 WL 2165995, at *8 (W.D. Wash. July 30, 2025); see also Phan v. Warden of Otay Mesa Det. Facility, No. 25-cv-2369 AJB BLM, 2025 WL 3141205, at *4 (S.D. Cal. Nov. 10, 2025) ("[E]vidence that Respondents have successfully removed other Vietnamese citizens is insufficient to demonstrate a significant likelihood that *Petitioner* will receive a travel document.") (emphasis in original).  Accordingly, petitioner is entitled to habeas relief on this alternative ground as well.

**IV.    Relief**

As explained above, Petitioner's continued detention is unconstitutional and unlawful under the applicable agency regulations and the Due Process Clause of the Fifth Amendment. Therefore, the undersigned recommends granting petitioner's requested relief of immediate release on the previously imposed conditions of supervision.[7]  See Zadvydas, 533 U.S. at 699–700; 8 U.S.C. § 1231(a)(3); 8 C.F.R. § 241.5 (conditions for release after removal period).

**CONCLUSION**

Accordingly, IT IS HEREBY ORDERED that Respondent's request for an extension of time to respond to the petition for writ of habeas corpus (ECF No. 7) is granted.

In addition, IT IS HEREBY RECOMMENDED that:

---

[6]  Moreover, numerous courts, including in this district, have recently held that requests for travel documents from Vietnam, alone, are insufficient to show a "significant likelihood" of removal under 8 C.F.R. § 241.13(i)(2).  See Nguyen, 2025 WL 3492117, at *4 (collecting cases); Hoac v. Becerra, No. 2:25-cv-1740 DC JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) ("Respondents have not provided any details about why a travel document could not be obtained in the past, nor have they attempted to show why obtaining a travel document is more likely this time around.").

[7] While petitioner has not specifically sought an order of release that requires a hearing before a neutral decision maker before any subsequent re-detention, the Court has ordered such additional relief in similar circumstances.  See Uzzhina, 2025 WL 3458787, at *6 ("Courts have consistently ordered the release of petitioners and enjoined re-detention absent a pre-detention hearing when ICE failed to follow its own regulations or failed to show an actual change in circumstances.").

10

1.   Petitioner's § 2241 application (ECF No. 1) be granted.

2.   Respondents be ordered to immediately release petitioner under the previously imposed conditions of supervision.

3.   Respondents be ordered to file a Notice of Compliance within two days of any order adopting these findings and recommendations confirming that petitioner has been released from custody.  Such notice shall note the exact terms of petitioner's ongoing conditions of supervision.

4.   Respondents shall not seek to revoke petitioner's supervision unless and until they comply with all procedures set forth in 8 C.F.R. § 241.13(i), any other applicable statutes and regulations, and the requirements of due process.

5.   The Clerk of Court be directed to enter judgment in favor of petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs.  See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 2, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE

11